IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTORIA L. TILLBERY      :
                          :
       v.                 :      CIVIL NO. CCB-09-2956
                          :
KENT ISLAND YACHT         :
CLUB, INC.                :

...o0o...

**MEMORANDUM**

Victoria L. Tillbery has sued Kent Island Yacht Club, Inc. ("KIYC") for discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and Article 49B of the Maryland Code,[1] as well as for retaliation under Title VII and Article 49B, negligent retention and supervision, and intentional infliction of emotional distress. Now pending before the court are KIYC's motion to dismiss or, in the alternative, for summary judgment and Ms. Tillbery's motion for leave to amend the complaint to allege further retaliation and constructive discharge. For the reasons set forth below, the court will grant the defendant's motion and deny the plaintiff's motion.

**BACKGROUND**

KIYC is a private yacht club located in Maryland that hosts a marina, a club house, and a restaurant for its patrons.[2] In July 2006, Ms. Tillbery began working at KIYC as a waitress and bartender. Her duties included taking orders and serving food and beverages to patrons at the KIYC restaurant. Ms. Tillbery alleges she became the victim of sexual harassment in the fall of 2008, after KIYC hired Kevin Demas as General Manager in July 2008. As General Manager,

---

[1]   Without substantive changes relevant to the present matter, Article 49B was recodified effective October 1, 2009 as MD. CODE ANN STATE GOV'T §§ 20-101 *et seq.*

[2]   The court does not reach KIYC's argument that it is a bona fide private membership club exempt from Title VII. *See* 42 U.S.C. § 2000e(b)(2).

1

Mr. Demas was Ms. Tillbery's direct supervisor, and he is alleged to have sexually harassed Ms. Tillbery on numerous occasions. Ms. Tillbery further alleges that, beginning in November 2008, Bob Schober, KIYC Rear Commodore and Board Member, began harassing her as well. At the time this complaint was filed, Ms. Tillbery continued to work at KIYC. In her motion for leave to amend the complaint, however, Ms. Tillbery alleges that she was constructively discharged on April 23, 2010.

Without going into exhaustive detail here, the facts alleged in Ms. Tillbery's complaint are troubling. Ms. Tillbery alleges that, between October 2008 and April 2009, Mr. Demas sent her over fifty inappropriate text messages, including requests for sexual considerations and descriptions of sexual acts that he wanted to perform on her. Mr. Demas is also alleged to have left similarly inappropriate notes in her paychecks. Ms. Tillbery further alleges that Mr. Demas repeatedly asked her to spend time with him outside of work, and once said "Everyone knows that you don't sleep with your husband" when she declined. (Compl. at ¶ 13.) In addition, he allegedly made at least twenty sexually inappropriate comments to Ms. Tillbery when she bent over to stock the refrigerator, including such statements as "Man you got the nicest ass. I could grab it right now", and "Oh baby oh baby." (*Id*. at ¶ 14.)

Mr. Demas's harassment of Ms. Tillbery is alleged to have included touching as well. In January 2009 Mr. Demas allegedly approached Ms. Tillbery from behind and began rubbing her shoulders, saying "You deserve to be treated better. Do you know how beautiful you are?" (*Id*. at ¶ 23.) Then he apparently grabbed each side of her face with his hands and attempted to forcibly kiss her, while saying "Just give me a kiss." (*Id*.) Later, in the spring of 2009, Mr. Demas allegedly hung up a rag doll with blonde hair wearing a bikini in the kitchen at KIYC. Ms. Tillbery has blonde hair and, along with the doll, Mr. Demas apparently posted a sign that

read "Vikalicious". (*Id*. at ¶ 27.) When another employee approached Mr. Demas about the doll, he allegedly responded "It's Vickie" and "I can do what I want." (*Id*.)

Moreover, Ms. Tillbery alleges that she was harassed not only by her direct supervisor, Mr. Demas, but also by KIYC Board Member and Rear Commodore, Mr. Schober, beginning in November 2008. Mr. Schober allegedly offered Ms. Tillbery money if she would have sex with him. According to Ms. Tillbery, he made this offer two to three times per week. Ms. Tillbery also alleges that he made other inappropriate comments to her, including "My wife isn't able to satisfy me, and I think you would be the one that could if you know what I mean", and "I know you need the money because I always see you working all the time. So if I give you $500, would you sleep with me?" (*Id*. at ¶ 17.) On April 10, 2009, Mr. Schober apparently came to Ms. Tillbery's home, which frightened her because she did not know how he learned where she lived. Mr. Schober allegedly said that he wanted a haircut, and tried to open the screen door to Ms. Tillbery's home. Ms. Tillbery asked him to leave, which he eventually did.

Ms. Tillbery claims that she told Mr. Demas of Mr. Schober's advances toward her on at least three occasions, but that there was no informal or formal sexual harassment policy in place at KIYC. The situation was particularly uncomfortable, she points out, because Mr. Demas was her direct supervisor, and Mr. Schober, as a member of the KIYC Board, was essentially Mr. Demas's supervisor. Unable to stand the harassment any longer, Ms. Tillbery submitted her resignation in writing on February 18, 2009. Mr. Demas allegedly promised her that the harassment would stop if she would agree to withdraw her resignation, which she reluctantly did, writing at the bottom of her resignation letter, "after speaking with Kevin, I [sic] that this situation will resolve itself. If the situation continues I will go to the labor board as I need this job to support my family." (*Id*. at ¶ 26.)

Eventually, Ms. Tillbery contacted the Equal Employment Opportunity Commission ("EEOC") by filling out an online intake questionnaire on April 22, 2009. A notice of Ms. Tillbery's charge, dated May 7, 2009, was sent to KIYC (*see* Def.'s Mem. at Ex. 3), and she filled out another questionnaire on May 4, 2009. Ms. Tillbery signed a formal EEOC charge under penalty of perjury on June 27, 2009. (*See id*. at Ex. 2.) By this time, Ms. Tillbery had hired an attorney, Cecile Weich,[3] who apparently sent a letter to KIYC requesting that Mr. Demas and Mr. Schober "cease and desist from your sexual harassment of her [Ms. Tillbery] and requests for sex for money." (Compl. at ¶ 33.) On April 27, 2009, Ms. Weich sent a follow-up letter to members of KIYC stating that "the General Manager and Rear Commodore Shober [sic] have been sexually harassing Victoria Tillbery." (*Id*.)

Furthermore, in May 2009, Ms. Tillbery went to the Queen Anne's County Sheriff's Department. As a result of that meeting the Sheriff's Department pursued criminal charges against Mr. Schober. Mr. Schober apparently was later convicted of solicitation for prostitution and sentenced on October 8, 2009, to probation before judgment, supervised until April 8, 2012. (*Id*. at ¶ 34.) He agreed to stay away from Ms. Tillbery, resigned from the KIYC board, and relinquished his membership in the club.

Ms. Tillbery alleges that in May 2009, immediately after she filed charges with the EEOC and the Sheriff's Department, she became the victim of retaliation. Mr. Demas allegedly told her that she could no longer arrive at work at 4:00 p.m. to perform her setup duties, therefore forcing her to perform them during the time that she could have been waiting tables and earning tips. On May 18, 2009, Ms. Tillbery also received a letter from KIYC's attorney complaining of a performance issue. Ms. Tillbery claims the letter was the only negative feedback she ever

---

[3] Ms. Weich does not represent Ms. Tillbery in the present action.

received during her tenure at KIYC.

According to Ms. Tillbery, her attorney again sent a letter to KIYC on May 19, 2009, this time explaining that Ms. Tillbery was suffering retaliation, and on May 21, 2009, Ms. Tillbery apparently provided a written statement to KIYC summarizing the harassing conduct by Mr. Demas. But Ms. Tillbery alleges the retaliatory conduct did not stop. Instead, she claims that on July 4, 2009, the busiest evening of the year at the KIYC restaurant, Mr. Demas ordered her to train a busser to be a waitress simply so that Ms. Tillbery would have to split her tips for the evening. On July 6, 2009, Ms. Tillbery allegedly complained in writing via her attorney, Ms. Weich, that she was still forced to serve Mr. Schober. She apparently complained of retaliatory treatment again in writing on July 10, 2009, describing how she was forced to train a busser and was prohibited from clocking in until 4:30. On July 24, 2009, counsel for KIYC wrote to Ms. Weich stating, "The Club has implemented safeguards to ensure that Ms. Tillbery is not required to serve Mr. Shober [sic]." (*Id*. at ¶ 41.)

The retaliation is alleged to have escalated, however, on October 12, 2009, when Ms. Tillbery was called into a meeting with Mr. Demas and Jack Caddy, a KIYC Board Member. Mr. Caddy told Ms. Tillbery that KIYC had received some complaints about her, although he provided no information as to the nature of the complaints, who made them, or when they were made. Ms. Tillbery alleges that soon thereafter, on October 21, 2009, she received a letter from KIYC stating that "employees may not clock in more than seven (7) minutes before their shift is scheduled to start", and that "it has been recorded that on Thursday, Oct. 15, 2009, you clocked in fourteen (14) minutes before your shift was scheduled to start and on Friday, Oct. 16, 2009, you clocked in twenty-five (25) minutes before your scheduled start time; both without consulting management." (*Id*. at ¶ 43.) Ms. Tillbery alleges that other employees who had

5

engaged in similar conduct did not receive a warning about the new policy and continued to clock in early.

Ms. Tillbery also alleges that Mr. Demas continues to retaliate against her by refusing to speak to her and constantly watching her. He allegedly instructed another bartender to watch Ms. Tillbery and document everything that she does. She claims that other employees have observed his unfair treatment of her and that, as a result of the harassment she has experienced at KIYC, she has suffered a loss of income, extreme and emotional distress, and mental anxiety.

On August 6, 2009, the EEOC notified Ms. Tillbery that it had dismissed her charge of discrimination as untimely and that she had a right to sue. (*See* Def.'s Mem. at Ex. 4.) On November 6, 2009, Ms. Tillbery filed the present action against KIYC alleging sexual harassment in violation of Title VII and Article 49B (Counts I & II), negligent retention and supervision (Count III), intentional infliction of emotional distress (Count IV), and retaliation in violation of Title VII and Article 49B (Counts V & VI).

## **ANALYSIS**

I.   *Standard of Review*

KIYC has moved to dismiss Ms. Tillbery's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. The court finds, however, that Ms. Tillbery has failed to exhaust her administrative remedies with regard to her Title VII claims and, therefore, will treat KIYC's motion as a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (explaining that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim").

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted only if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. County Comm'rs of Carroll County*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (internal quotation marks and citation omitted).

II.     *Exhaustion of Administrative Remedies*

KIYC argues that Ms. Tillbery's EEOC charge was untimely and that her Title VII sexual harassment and retaliation claims must therefore be dismissed for failure to exhaust administrative remedies. For the reasons that follow, the court is constrained to agree.[4]

Before a plaintiff may file suit under Title VII, she is required to file a charge of discrimination with the EEOC. *See Jones*, 551 F.3d at 300 (citing 42 U.S.C. § 2000e-5(f)(1)). The EEOC charge limits the scope of any later judicial complaint, and it must be in writing and verified under oath or affirmation under penalty of perjury. *Id.* Furthermore, it must be filed within 180 days "after the alleged unlawful employment practice occurred". 42 U.S.C. § 2000e-

---

[4] Although in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), the Supreme Court held that the untimeliness of an administrative charge does not affect federal jurisdiction over a Title VII claim, a failure to exhaust administrative remedies nevertheless deprives a federal court of its subject matter jurisdiction. *Jones*, 551 F.3d at 300 & n.2 (noting that *Zipes* is not to the contrary). Here, Ms. Tillbery's present allegations were outside the scope of her EEOC charge due to an apparent error in the dates listed on the charge. As a result, Ms. Tillbery has not exhausted her administrative remedies and, thus, the court lacks subject matter jurisdiction over them. Accordingly, it is appropriate to treat KIYC's motion as a Rule 12(b)(1) motion and to consider evidence outside the pleadings.

5(e)(1). This period is extended to 300 days in a deferral state, such as Maryland, which has a local or state agency with authority to grant or seek relief. *Id.* The timeliness requirements for filing discrimination claims are to be strictly enforced. *Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 748 (D. Md. 2002); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005) (observing that "Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation"). Accordingly, charges filed outside the time frame are barred. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

Ms. Tillbery first submitted an EEOC intake questionnaire online on April 22, 2009. She submitted a nearly identical handwritten intake questionnaire to the EEOC on May 4, 2009, and she signed a formal EEOC charge under penalty of perjury on June 27, 2009.[5] Although Ms. Tillbery's judicial complaint alleges that she was sexually harassed by Mr. Demas and Mr. Schober beginning in the fall of 2008, her formal EEOC charge stated that the earliest and latest dates of discrimination were July 1, 2006. (*See* Def.'s Mem. at Ex. 2.) Similarly, the narrative portion of the charge stated that "On July 1, 2006, I was hired by the above referenced employer as a waitress. On this same date I was subjected to sexual harassment by Kevin Demass [sic] (General Manager) and Bob Shober [sic] (Rear Commodore). Sexual language was used, I was propositioned for money, and there was a display of a doll for sexual purposes." (*Id.*) Ms. Tillbery did not check the "continuing action" box on the charge. (*See id.*) Moreover, the only date with regard to discriminatory activity indicated on Ms. Tillbery's previous two EEOC intake questionnaires was "7/01/2006". (*See* Pl.'s EEOC Intake Questionnaires submitted as Docket Entry No. 14.) Just as Ms. Tillbery's formal charge failed to allege any continuing action, the narrative portions of her intake questionnaires also failed to indicate that the activity of which

---

[5] Ms. Tillbery's EEOC charge and intake questionnaires alleged only discrimination based on sex, and not retaliation.

8

she complained was ongoing. (*See id*.)

Even under the extended 300-day time limit, discriminatory acts taking place on July 1, 2006 would have been untimely by June 27, 2009, when Ms. Tillbery filed her formal EEOC charge. They would also have been untimely by April 22, 2009, when Ms. Tillbery first filled out an EEOC questionnaire online. *See Valderrama v. Honeywell Tech. Solutions, Inc.*, 473 F. Supp. 2d 658, 662 (D. Md. 2007) (noting that the Fourth Circuit has not precisely addressed the issue of whether an EEOC intake questionnaire may serve as a charge for purposes of the timely filing requirements). Accordingly, on August 6, 2009, the EEOC dismissed Ms. Tillbery's charge as untimely. (*See* Def.'s Mem. at Ex. 4.)

KIYC now argues that Ms. Tillbery's judicial complaint must be dismissed for failure to exhaust administrative remedies because her EEOC charge was untimely. In response, Ms. Tillbery argues that the July 1, 2006 date in the EEOC charge was merely a clerical error by the EEOC representative who drafted the form, and that all of the facts alleged in her judicial complaint occurred within 300 days of June 27, 2009. Assuming the truth of the facts alleged in the complaint, it appears likely that Ms. Tillbery's EEOC charge did contain the wrong date, as Mr. Demas was not even hired by KIYC until July 2008. Any clerical error, however, was made not only by the EEOC representative who filled out Ms. Tillbery's charge of discrimination, but also by Ms. Tillbery herself on two separate occasions, when in her EEOC intake questionnaires she wrote July 1, 2006 as the only date of alleged discriminatory activity. Moreover, Ms. Tillbery, who was represented by counsel at the time, signed the formal EEOC charge under penalty of perjury despite its apparent inaccuracy, and she failed to later amend the charge to correct the error. *See Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994) (explaining that "[a] charge may be amended to cure technical defects or omissions") (internal citation omitted); *see*

9

*also Risk v. Ford Motor Co.*, 48 F. Supp. 2d 1135, 1146 n.9 (S.D. Ind. 1999) (inquiring as to why an EEOC claimant neither caught "the error after reviewing her draft EEOC charge and before signing her name to it", nor "pursue[d] some corrective action with the EEOC, such as by sending a letter to the EEOC documenting the alleged error").

Although Ms. Tillbery argues that the apparent error in her EEOC charge is insignificant, its effect is not. The requirement that a claimant inform the EEOC of the date(s) of the alleged discriminatory activity is not merely a technicality. Rather, such information notifies the agency of the scope of its investigation, and ultimately, the "scope of a plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents." *Jones*, 551 F.3d at 300. Moreover, among the reasons Congress enacted Title VII's exhaustion requirement was that the EEOC administrative process is typically better suited to ending discrimination than the "ponderous pace of formal litigation", because the EEOC "undertakes detailed investigations into potential discrimination claims before any suit is filed, both preserving judicial economy . . . and helping prospective plaintiffs build their case." *Chacko*, 429 F.3d at 510 (internal quotation marks and citations omitted).

Here, however, the EEOC did not, and could not have, undertaken a detailed investigation of Ms. Tillbery's claims because all of the documents she submitted to the agency stated that she was sexually harassed only on July 1, 2006, leading the agency to conclude simply that her allegations were untimely. Although a plaintiff may be found to have exhausted her administrative remedies "if a reasonable investigation of [her] administrative charge would have uncovered the factual allegations set forth in formal litigation", *id.* at 512, that was not the case here. Neither the questionnaires she completed, nor the narrative portion of her formal EEOC charge, alerted the agency to the possibility that the alleged harassment was ongoing or

occurred on a date other than July 1, 2006. Thus, as a result of the alleged clerical error, the scope of the EEOC investigation was limited to a date of alleged harassment that was time-barred on its face. The allegations in Ms. Tillbery's present complaint therefore, exceed the scope of her administrative charge and have not been properly exhausted.[6] *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (affirming dismissal of plaintiff's retaliation, color and sex discrimination claims because they exceeded the allegations in his administrative complaint). Accordingly, the court must dismiss Ms. Tillbery's Title VII sex discrimination claim.

Ms. Tillbery's Title VII retaliation claim must also be dismissed. A retaliation claim may be raised for the first time in federal court by relating back to a previous EEOC charge, *Jones*, 551 F.3d at 302 (citing *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)), so long as the retaliatory conduct complained of occurred *after* the EEOC charge was filed. *See Riley v.*

---

[6] This case is distinguishable from *Carter v. Washington Metro. Area Transit Auth.*, 503 F.3d 143 (D.C. Cir. 2007). In *Carter*, the plaintiff alleged that she was sexually assaulted by a coworker on July 6, 2004, but wrote the incorrect date, "4-6-04" on her EEOC intake questionnaire, which she completed on October 25, 2004. *Id*. at 144. Later, she signed a formal EEOC charge, which included the correct date of the alleged assault, but was submitted to the EEOC more than 180 days after July 6, 2004. *Id.* at 145. The district court dismissed the plaintiff's claim as untimely because the date alleged in the questionnaire was more than 180 days before the questionnaire was filed, and the date alleged in the formal EEOC charge was more than 180 days before the charge was verified. *Id*. The D.C. Circuit reversed, however, holding that "[s]ince the parties agree July 6, 2004 is the date the alleged unlawful practice occurred" the plaintiff had in fact filed a charge within 180 days of this date by the "completion of an EEOC questionnaire on October 25, 2004". *Id*. at 146. The court found that the spirit of the law was better served by its determination that the plaintiff had fulfilled the 180-day filing requirement since she had completed a questionnaire on October 25, 2004 and it was undisputed that the alleged discrimination occurred on July 6, 2004. *Id*.

Here, by contrast, neither Ms. Tillbery's intake questionnaires, nor her formal EEOC charge, include the correct date, or any indication that the alleged discrimination was ongoing. Unlike in *Carter*, the combination of documents Ms. Tillbery submitted to the EEOC does not provide any record of the true date(s) of discrimination. Accordingly, the EEOC was not given the chance to investigate Ms. Tillbery's allegations, or to provide KIYC with sufficient notice of them.

*Technical Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1460 (D. Md. 1995). A retaliation claim may bootstrap onto an earlier EEOC charge, however, only where the EEOC charge is "properly" before the court. *Franceschi v. U.S. Dep't of Veteran Affairs*, 514 F.3d 81, 87 (1st Cir. 2008) (cited approvingly by the Fourth Circuit in *Jones*, 551 F.3d at 304). Thus, where a discrimination charge is dismissed as untimely, a retaliation claim must also be dismissed because it has "no charge on which to attach itself". *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 479 (5th Cir. 1991) (affirming dismissal of a retaliation claim where the EEOC charge was untimely). Because Ms. Tillbery's EEOC charge is not properly before the court, her retaliation claim has no charge on which to attach itself and must also be dismissed for failure to exhaust administrative remedies.[7]

III.    *Remaining State Law Claims*

Ms. Tillbery's remaining claims are all state law claims. As all federal claims are being dismissed, the court will decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3). They will be dismissed without prejudice to re-filing in state court.

## CONCLUSION

For the foregoing reasons, the defendant's motion will be granted and the plaintiff's motion will be denied. A separate Order follows.

    June 4, 2010                                                          /s/
Date                                                                 Catherine C. Blake
                                                                        United States District Judge

---

[7] For the same reasons, Ms. Tillbery's recently-filed motion for leave to amend the complaint will be denied, although nothing in this ruling precludes Ms. Tillbery from filing a new EEOC charge as to any alleged acts of discrimination not presently time-barred.